WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:     (212) 382-3300
Facsimile:     (212) 382-0050
William A. Maher
James N. Lawlor
Adam M. Bialek

*Attorneys for Lehman Brothers Special Financing Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS SPECIAL FINANCING INC.,<br><br>Plaintiff,<br><br>-against-<br><br>MERRILL LYNCH CAPITAL SERVICES INC.,<br><br>Defendant. | Adversary Proceeding<br>No.: _____ (SCC) |

**ADVERSARY COMPLAINT**

Lehman Brothers Special Financing Inc. ("LBSF"), through Lehman Brothers Holdings Inc. ("LBHI"), the Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), as and for its Complaint against defendant Merrill Lynch Capital Services Inc. ("MLCS"), alleges as follows:

## NATURE OF THE ACTION

1. Prior to filing for bankruptcy protection, LBHI, LBSF and their subsidiaries and affiliates comprised the world's fourth largest investment bank. At any given moment, LBSF was a counterparty to hundreds of thousands of live trades with thousands of counterparties. Depending upon the nature of the transaction and the counterparties, LBSF utilized the services of third-party institutions to clear, keep track of and hedge its trade portfolio.

2. In June 2008, MLCS erroneously identified two non-existent interest rate swaps (the "Erroneous Transactions") and sought to process them, as though they were live trades with LBSF, through a third party, LCH.Clearnet (a/k/a London Clearing House) ("LCH"), an independent clearing house. LCH accepted the registration of the trades, based in part upon MLCS's erroneous information, and thereafter proceeded as though they were live trades subject to being processed in accordance with LCH's rules.

3. In July 2008, MLCS made a payment of approximately $1.6 million through the LCH system with respect to one of the Erroneous Transactions, for the benefit of LBSF. That same day, MLCS contacted LBSF by email concerning this $1.6 million payment, stating that the payment had been made in error, and requesting that LBSF return the $1.6 million payment to MLCS directly, without the involvement of LCH. LBSF, which did not have a record of the Erroneous Transactions on its own books, reasonably relied upon MLCS's representation that the payment was an error and promptly returned the money directly to MLCS, as requested.

4. Despite its own acknowledgement that at least one of the Erroneous Transactions was a mistake, MLCS continued to allow the Erroneous Transactions to remain with LCH as though they were live trades. MLCS's actions and omissions in this regard resulted

in the improper transfer of $21 million in LBSF's cash collateral to the benefit of MLCS.  MLCS had no right to that collateral amount.

5.   Despite MLCS's recognition of the error in July 2008, MLCS failed and refused, and continues to refuse, to return to LBSF the $21 million in cash collateral.  There is no doubt that MLCS received $21 million that belonged to LBSF.  It would be unjust for MLCS to retain LBSF's money and, as a matter of equity, MLCS should not be permitted to keep it.

6.   In the alternative, if this Court determines that the Erroneous Transactions are enforceable and/or that MLCS has no obligation to return to LBSF the improper collateral transfer of $21 million, MLCS must repay LBSF, at a minimum, the $1.6 million (plus interest) that LBSF returned to MLCS in July 2008 that related to the Erroneous Transactions.

## PARTIES

7.   On September 15, 2008, LBHI commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  LBSF sought bankruptcy protection shortly thereafter, on October 3, 2008.  LBSF's chapter 11 case has been consolidated with the other above-captioned debtors and debtors-in-possession, and those cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

8.   Plaintiff LBSF is a Delaware corporation with its principal place of business at 1271 Sixth Avenue, New York, New York 10020.

9.   Defendant MLCS is a Delaware corporation with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

10.   This adversary proceeding is commenced pursuant to Rule 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

11. This Court has subject-matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 and as the matter has a close nexus with the Plan, which became effective on March 6, 2012. The Court has retained post-confirmation jurisdiction over this matter pursuant to section 14.1 of the Plan and paragraph 77 of the Order dated December 6, 2011 confirming the Plan.

12. Venue is proper under 28 U.S.C. §§ 157(a), 1408, and 1409.

13. This Court has personal jurisdiction over MLCS.

## BACKGROUND

A. **The Erroneous Transactions**

14. On or about June 13, 2008, MLCS unilaterally submitted data that ostensibly represented the Erroneous Transactions to LCH and LBSF for the purposes of registering the trades with LCH. By submitting the data, MLCS represented to LCH and LBSF that it had two live U.S. dollar interest rate swaps with LBSF as the counterparty.

15. Apparently unaware that no original contracts existed for the Erroneous Transactions, LCH processed and registered the Erroneous Transactions as though they were live trades.

16. LCH accepted the registration of the Erroneous Transactions on June 16, 2008.

17. Because the trades were not live, LBSF had not booked the Erroneous Transactions in its computerized derivatives system. As a consequence, the Erroneous Transactions were absent from LBSF's "live" population.

18. Although LBSF did not book the Erroneous Transactions in its computer system, LCH continued to treat the Erroneous Transactions as "live" in accordance with MLCS's submission of erroneous data. This produced a series of improper collateral transfers and

payment flows, as described below, which, in the aggregate, were to the benefit of MLCS and to the detriment of LBSF.

### B.    The Purported Terms of the Erroneous Transactions

19.    The first Erroneous Transaction was a U.S. dollar interest rate swap transaction with a notional amount of $214 million ("Erroneous Transaction # 1"). LBSF was to make semi-annual payments to LCH at a fixed rate of 5.6075%, and LCH was to make quarterly floating rate payments at 3-month USD-LIBOR-BBA to LBSF based upon the same notional amount. Correspondingly, on the same dates, MLCS was to make quarterly floating rate payments at 3-month USD-LIBOR-BBA to LCH, and LCH was to make semi-annual payments to MLCS at a fixed rate of 5.6075% on the same notional amount.

20.    The second Erroneous Transaction was another U.S. dollar interest rate swap with a notional amount of $58.5 million ("Erroneous Transaction # 2"). MLCS made semi-annual payments to LCH at a fixed rate of 5.4350%, and LCH made quarterly floating rate payments at 3-month LIBOR to MLCS based upon the same notional amount. Correspondingly, on the same dates, LBSF made quarterly floating rate payments at 3-month USD-LIBOR-BBA to LCH, and LCH made semi-annual payments to LBSF at a fixed rate of 5.4340% on the same notional amount.

21.    The Erroneous Transactions mimicked the economic terms of two earlier swap transactions between LBSF and MLCS (the "Similar Transactions"). On or about April 18, 2008, the Similar Transactions were terminated by mutual agreement of LBSF and MLCS. At the time of the termination, the counterparties that were paying the floating rate were owed significant termination payments. Accordingly, to close out the Similar Transactions, LBSF paid MLCS $24,067,901, and MLCS paid LBSF $4,919,664, so that, on a net basis, LBSF paid MLCS $19,148,237.

**C.      The Improper Collateral Adjustments**

22.     LCH requires participants to post initial margin (essentially cash collateral) in connection with transactions that it processes in order to protect itself against possible losses incurred in closing out a defaulting counterparty's portfolio.

23.     Initial margin is posted at the outset of a transaction. Thereafter, LCH monitors the impact of changing prices and positions on the value and initial margin requirements of a party's portfolios throughout the day. At times, LCH makes intra-day margin calls which are calculated, paid and received daily (the "Variation Margin").

24.     Between June 16, 2008 and September 12, 2008, (i) LBSF paid $26,549,196 in initial margin and Variation Margin to LCH in respect to Erroneous Transaction # 1 ("LBSF's Improper Collateral Payments") and (ii) MLCS paid $5,525,156 in initial and Variation Margin to LCH in respect to Erroneous Transaction # 2 ("MLCS's Improper Collateral Payments"). At the same time, MLCS received a corresponding credit in its margin account with LCH with respect to Erroneous Transaction #1 and LBSF received a corresponding credit in its margin account for Erroneous Transaction #2. When LBSF's Improper Collateral Payments and MLCS's Improper Collateral Payments are netted against each other, LBSF paid $21,024,040 in margin payments to LCH in respect of the Erroneous Transactions and MLCS received corresponding credits (the "Improper Collateral Adjustments").

25.     The Improper Collateral Adjustments to LBSF's margin account with LCH thus resulted in a "pass through" and credit to the MLCS margin account at LCH of approximately $21 million.

**D.      MLCS Recognizes an Error, and LBSF Returns a Payment**

26.     Under Erroneous Transaction #1, MLCS made a payment of Variation Margin to LCH of $1,579,557.78 on July 24, 2008.

6

27. Upon information and belief, LCH passed through MLCS's $1,579,557.78 payment to LBSF.

28. On that same day, MLCS contacted LBSF via an email entitled, "FUNDS PAID IN ERROR VD 24/07/08." The email provided that "$1,579,557.78 has been paid to [LBSF] through the LCH" in error. MLCS requested repayment of funds directly, as opposed to through LCH. Specifically, MLCS asked LBSF to "confirm that you are o/s the USD 1,579,557.78 & that you will pay these funds back to ML outside the LCH."

29. As requested, LBSF returned the funds directly to MLCS (the "July 2008 Payment"). The return of the funds was consistent with LBSF's own records, which did not reflect a "live" swap transaction between the parties.

30. Upon information and belief, notwithstanding what was an acknowledgement by MLCS in its July 28, 2008 email that Erroneous Transaction #1 was not live, MLCS did not ensure that its prior erroneous information to LCH regarding the Erroneous Transactions was undone.

E.   **The Erroneous Transactions Continued**

31. As a result of MLCS's failure to ensure that LCH rescinded the Erroneous Transactions in July 2008, LCH continued to treat the Erroneous Transactions as "live" and continued to make Variation Margin calculations and process payments from MLCS and LBSF.

32. On September 8, 2008, erroneous payments were made to LCH with respect to Erroneous Transaction # 2 by both Merrill and LBSF. Specifically, MLCS made its fixed leg payment of $1,598,569.38 to LCH and LBSF made its floating leg payment of $395,843.63 to LCH. Accordingly, LCH passed through to LBSF a net amount of $1,202,725.75.

33. As a result of the LBHI Bankruptcy filing on September 15, 2008, LCH moved to close out LBSF's portfolio of trades.

## COUNT I

### *(Unjust Enrichment – Improper Collateral Adjustments)*

34. LBSF repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

35. On or about June 13, 2008, MLCS unilaterally submitted the data that ostensibly represented the Erroneous Transactions to LCH for the purposes of registering the trades with LCH. LCH accepted the registration of the Erroneous Transactions on June 16, 2008, and thereafter proceeded as though they were live trades subject to being processed in accordance with LCH's rules.

36. As a result of the registration of the Erroneous Transactions, LCH made Improper Collateral Adjustments to LBSF's margin account with LCH that resulted in a "pass through" and credit to the MLCS margin account at LCH of approximately $21 million in cash collateral. MLCS thereby received an improper windfall.

37. MLCS has been improperly and unjustly enriched at LBSF's expense as a result of the Erroneous Transactions.

38. Equity and good conscience require that MLCS return the approximately $21 million (plus interest) to LBSF.

39. As a result of MLCS's unjust enrichment, LBSF has been injured and is entitled to damages in an amount to be proven at trial.

8

# COUNT II

### *(Money Had and Received – Improper Collateral Adjustments)*

40. LBSF repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

41. On or about June 13, 2008, MLCS unilaterally submitted the data that ostensibly represented the Erroneous Transactions to LCH for the purposes of registering the trades with LCH. LCH accepted the registration of the Erroneous Transactions on June 16, 2008, and thereafter proceeded as though they were live trades subject to being processed in accordance with LCH's rules.

42. As a result of the registration of the Erroneous Transactions, LCH made Improper Collateral Adjustments to LBSF's margin account with LCH that resulted in a "pass through" and credit to the MLCS margin account at LCH of approximately $21 million in cash collateral. LBSF had an interest in the funds.

43. As a result of the Erroneous Transactions, subsequent Improper Collateral Adjustments, and "pass through" of money to the MLCS margin account, MLCS received funds that rightfully belonged to LBSF. Indeed, the cash collateral credited to MLCS resulted in an improper windfall to MLCS. LBSF received nothing in return.

44. Principles of equity and good conscience dictate that MLCS not be permitted to retain the funds that belong to LBSF. Such funds should therefore be returned to LBSF.

45. As a direct and proximate cause of the conduct described above, LBSF has suffered damages in an amount to be proven at trial.

## **COUNT III**

*(Recovery of Mistaken Payment – Improper Collateral Adjustments)*

46. LBSF repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

47. On or about June 13, 2008, MLCS unilaterally submitted the data that ostensibly represented the Erroneous Transactions to LCH for the purposes of registering the trades with LCH. LCH accepted the registration of the Erroneous Transactions on June 16, 2008, and thereafter proceeded as though they were live trades subject to being processed in accordance with LCH's rules.

48. LBSF acted under a misapprehension of fact because it mistakenly accepted MLCS's error in initiating the Erroneous Transactions.

49. LBSF was under no obligation to make the Improper Collateral Adjustments to LCH that were then passed through to MLCS between June 2008 and September 2008, and MLCS derived a benefit as a result.

50. Equity demands that MLCS repay LBSF the amounts mistakenly paid to MLCS.

51. Upon information and belief, MLCS did not take actions in reasonable and detrimental reliance upon the payments mistakenly made to MLCS.

52. By reason of the foregoing, LBSF is entitled to a judgment in an amount to be determined at trial.

# COUNT IV

### *(In the Alternative, Unjust Enrichment – July 2008 Payment)*

53.  LBSF repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

54.  In the alternative, if the Erroneous Transactions are enforceable and the Court deems that the Improper Collateral Adjustments do not have to be returned to LBSF, MLCS must reimburse LBSF for the July 2008 Payment.

55.  Under Erroneous Transaction #1, MLCS made a payment to LCH of $1,579,557.78.

56.  LCH passed through the $1,579,557.78 to LBSF.

57.  On that same day, MLCS contacted LBSF via an email and informed LBSF that the payment was made in error and requested that the funds be returned to MLCS.

58.  As requested, LBSF returned the funds directly to MLCS.

59.  To the extent the Erroneous Transactions are enforceable, MLCS received a windfall since the money belonged to LBSF.

60.  To the extent the Erroneous Transactions are enforceable, MLCS has been improperly and unjustly enriched at LBSF's expense as a result of the return of the $1,579,557.78 that rightfully belonged to LBSF.

61.  Equity and good conscience require that MLCS return the $1,579,557.78 (plus interest) to LBSF.

62.  As a result of MLCS's unjust enrichment, LBSF has been injured and is entitled to damages.

# COUNT V

### *(In the Alternative, Money Had and Received – July 2008 Payment)*

63. LBSF repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

64. In the alternative, if the Erroneous Transactions are enforceable and the Court deems that the Improper Collateral Adjustments do not have to be returned to LBSF, MLCS must reimburse LBSF for the July 2008 Payment.

65. Under Erroneous Transaction #1, MLCS made a payment to LCH of $1,579,557.78.

66. LCH passed through the $1,579,557.78 to LBSF. To the extent the Erroneous Transactions are enforceable, that money belonged to LBSF.

67. On that same day, MLCS contacted LBSF via an email and informed LBSF that the payment was made in error and requested that the funds be returned to MLCS.

68. As requested, LBSF returned the funds directly to MLCS.

69. To the extent the Erroneous Transactions are enforceable, MLCS received an improper windfall because the money belonged to LBSF. That money was in excess of what MLCS was entitled to under the Erroneous Transactions. Indeed, the money returned to MLCS resulted in an improper windfall to MLCS. LBSF received nothing in return.

70. The principles of equity and good conscience dictate that MLCS not be permitted to retain the $1,579,557.78 that belongs to LBSF. Such funds should therefore be returned to LBSF.

71. As a direct and proximate cause of the conduct described above, LBSF has suffered damages in an amount to be proven at trial.

## COUNT VI

### *(In the Alternative, Recovery of Mistaken Payment – July 2008 Payment)*

72. LBSF repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

73. In the alternative, if the Erroneous Transactions are enforceable and the Court deems that the Improper Collateral Adjustments do not have to be returned to LBSF, MLCS must reimburse LBSF for the July 2008 Payment.

74. Under Erroneous Transaction #1, MLCS made a payment to LCH of $1,579,557.78.

75. LCH passed through the $1,579,557.78 to LBSF. To the extent the Erroneous Transactions are enforceable, that money belonged to LBSF.

76. On that same day, MLCS contacted LBSF via an email and informed LBSF that the payment was made in error and requested that the funds be returned to MLCS.

77. LBSF acted under a misapprehension of fact because it mistakenly accepted MLCS's mistaken and false representation that Erroneous Transaction #1 was not live and returned $1,579,557.78 that belonged to LBSF.

78. LBSF was under no obligation to make the $1,579,557.78 payment to MLCS, and MLCS derived a benefit as a result.

79. Equity demands that MLCS repay LBSF the amounts mistakenly paid to MLCS.

80. Upon information and belief, MLCS did not take actions in reasonable and detrimental reliance upon the payments mistakenly made to MLCS.

81. By reason of the foregoing, LBSF is entitled to a judgment in an amount to be determined at trial, but not less than in the amount of $1,579,557.78, plus interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

A. Damages against MLCS in an amount to be determined at trial plus interest; and

B. Any such other and further relief as the Court deems just and proper, including costs and attorneys' fees.

Dated:   New York, New York
         June 12, 2014

Respectfully submitted,

WOLLMUTH MAHER & DEUTSCH LLP

By: /s/ William A. Maher
    William A. Maher
    James N. Lawlor
    Adam M. Bialek

500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050

*Attorneys for
Lehman Brothers Special Financing Inc.*