**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————x
: 
:            Chapter 11
In re:                                                         :
:            Case No. 08-13555 (SCC)
LEHMAN BROTHERS HOLDINGS INC., *et al.*    :
:
Debtors.                            :
——————————————————————x
:
LEHMAN BROTHERS SPECIAL FINANCING INC.,    :
:
Plaintiff,                          :
:
-against-                                                    :            Adversary Proceeding
:            No.:  14-02030 (SCC)
MERRILL LYNCH CAPITAL SERVICES INC.,        :
:
Defendant.                          :
:
——————————————————————x

### MEMORANDUM OF LAW OF PLAINTIFF LEHMAN BROTHERS SPECIAL FINANCING INC. IN OPPOSITION TO THE MOTION OF DEFENDANT MERRILL LYNCH CAPITAL SERVICES INC. TO DISMISS THE COMPLAINT FOR FAILURE TO ADD A REQUIRED PARTY

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:      (212) 382-3300
Facsimile:      (212) 382-0050

William A. Maher
James N. Lawlor
Melissa A. Finkelstein

*Attorneys for Lehman Brothers Special*
*Financing Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ................................................................................................. 4

    A.    The Complaint ............................................................................................. 4

    B.    The Rule 12(b)(6) Motion to Dismiss ...................................................... 6

    C.    The Second Motion to Dismiss ................................................................ 8

ARGUMENT ......................................................................................................................... 9

I.    Applicable Pleading Standard on MLCS's Motion To
Dismiss Under Rule 12(b)(7) ................................................................................. 9

II.    MLCS Has Failed to Meet Its Burden of Proof That LCH Is a
Required Party Under Rule 19(a) ........................................................................ 12

    A.    The Parties to This Action Can Obtain Complete Relief
        Without Joinder of LCH ......................................................................... 12

    B.    LCH Has No Interest That May Be Impaired, and MLCS Is Not at
        Risk for Multiple or Inconsistent Rulings as a Result of LCH's Absence ............ 13

        1.    LCH Has No Interest in This Action ......................................... 14

        2.    LCH Will Not Lose Its Ability To Protect Its Interests If Not Present ...... 16

        3.    There Is No Risk of Inconsistent Obligations as a
            Result of LCH's Absence ........................................................ 17

III.    Even If, *Arguendo*, LCH Is a Required Party, But Its Joinder Is Not Feasible, the Court
Should Not Dismiss the Complaint ....................................................................... 19

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*2 Montauk Highway LLC v. Global Partners LP*,
    296 F.R.D. 94 (E.D.N.Y. 2013) ....................................................................................22

*Barbata v. Latamie*,
    No. 11-cv-7381, 2012 U.S. Dist. LEXIS 77312 (S.D.N.Y. June 4, 2012) ........................14

*Certain Underwriters at Lloyd's of London v. Ill. Nat'l Ins. Co.*,
    No. 09-cv-4418, 2012 U.S. Dist. LEXIS 141798 (S.D.N.Y. Sept. 24, 2012) ............21, 25

*Cmty. Health Care Ass'n v. Mahon*,
    106 F. Supp. 2d 523 (S.D.N.Y. 2000)..............................................................................12

*CP Solutions PTE, Ltd. v. Gen. Electric Co.*,
    553 F.3d 156 (2d Cir. 2009)......................................................................................10, 19

*Davidson Well Drilling, Ltd. v. Bristol-Myers Squibb Co.*,
    No. 09-cv-1431, 2009 U.S. Dist. LEXIS 60980 (S.D.N.Y. July 15, 2009)......................14

*Errico v. Stryker Corp.*,
    281 F.R.D. 182 (S.D.N.Y. 2012) ....................................................................................20

*Fed. Ins. Co. v. SafeNet, Inc.*,
    758 F. Supp. 2d 251 (S.D.N.Y. 2010)..............................................................................19

*Ferguson v. Hannover Ruckversicherungs-Aktiengesellschaft*,
    No. 04-cv-9254, 2007 U.S. Dist. LEXIS 61441 (S.D.N.Y. Aug. 20, 2007)......................23

*Global Detection & Reporting, Inc. v. Securetec Detektions-Systeme AG*,
    No. 08-cv-5441, 2008 U.S. Dist. LEXIS 95038 (S.D.N.Y. Nov. 21, 2008)...............15, 16

*Global Disc. Travel Servs., LLC v. TWA*,
    960 F. Supp. 701 (S.D.N.Y. 1997)..................................................................................15

*Hovensa, L.L.C. v. Technip Italy S.p.A.*,
    No. 08-cv-1221, 2009 U.S. Dist. LEXIS 21191(S.D.N.Y. Mar. 16, 2009)......................15

*Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank*,
    659 F.2d 234 (D.C. Cir. 1981) .........................................................................................9

*In re Caesars Palace Sec. Lit.*,
    360 F. Supp. 366 (S.D.N.Y. 1973)..................................................................................11

*Jonesfilm v. Lion Gate Int'l*,
    299 F.3d 134 (2d Cir. 2002)............................................................................4, 11, 12, 14

*LCE Lux Holdco S.A.R.L. v. Entretenimiento GM de Mex. S.A. DE.C.V.*,
   287 F.R.D. 230 (S.D.N.Y. 2012). ....................................................................22

*Lomayaktewa v. Hathaway*,
   520 F.2d 1324 (9th Cir. 1975) ......................................................................16

*Mfrs. Hanover Trust Co. v. Chem. Bank*,
   559 N.Y.S.2d 704 (1st Dep't 1990) ...............................................................24

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013)...............................................................4, 9, 10, 23

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*,
   471 F.3d 377 (2d Cir. 2006).................................................3, 4, 11, 13, 16, 18

*Peregrine Myanmar Ltd. v. Segal*,
   89 F.3d 41 (2d Cir. 1996) ......................................................................4, 12, 13

*Republic of the Philippines v. Pimentel*,
   553 U.S. 851 (2008)..........................................................................10, 19, 21

*Ryan v. Volpone Stamp Co.*,
   107 F. Supp. 2d 369 (S.D.N.Y. 2000)............................................................15

*Third Ave. Trust v. SunTrust Bank*,
   163 F. Supp. 2d 215 (S.D.N.Y. 2001)......................................................11, 14

*Tweed-New Haven Airport Auth. v. Town of E. Haven*,
   No. 3:08-cv-597, 2008 U.S. Dist. LEXIS 118085 (D. Conn. Aug. 8, 2008)....................12

*Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*,
   312 F.3d 82 (2d Cir. 2002)............................................................................21

*William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co.*,
   No. 07-cv-10639, 2009 U.S. Dist. LEXIS 21818 (S.D.N.Y. Feb. 23, 2009).........18, 20, 25

*Zeebaas, LLC v. Rober W. Koelewyn Danco Sports, Inc.*,
   No. 3:11-cv-11, 2011 U.S. Dist. LEXIS 122035 (D. Conn. Oct. 21, 2011) ....................23

*Z & B Enters. v. Tastee-Freez Int'l, Inc.*,
   162 F. App'x 16 (1st Cir. 2006).....................................................................16

## Statutes and Rules

Fed. R. Bankr. P. 7012(b) ..............................................................................1

Fed. R. Bankr. P. 7019...................................................................................1

Fed. R. Civ. P. 12(b)(6)..................................................................................6, 7, 8, 9, 13

Fed. R. Civ. P. 12(b)(7)..................................................................................1, 9, 11, 25

Fed. R. Civ. P. 19 .........................................................3, 4, 8, 9, 11, 12, 13, 14, 17, 19

7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
Federal Practice and Procedure § 1608 (3d ed. 2001, rev. 2010) ...........................................20, 21

Plaintiff Lehman Brothers Special Financing Inc. ("LBSF"), through Lehman Brothers

Holdings Inc. ("LBHI"), the Plan Administrator under the Modified Third Amended Joint

Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"),

respectfully submits this memorandum of law in opposition to the motion of defendant MLCS

Lynch Capital Services Inc. ("MLCS"), dated February 26, 2015, to dismiss the Complaint dated

June 12, 2014 (the "Complaint"), pursuant to Rules 7012(b) and 7019 of the Federal Rules of

Bankruptcy Procedure and Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure (the

"Rules"), for failure to join a required party.

## PRELIMINARY STATEMENT

MLCS has filed a *second* motion to dismiss the Complaint, on the *same* factual record

previously before the Court (*i.e.*, merely the allegations of the Complaint), yet once again

improperly injects its own factual assertions into its motion papers.[1]  None of these assertions are

contained in the Complaint, and none have a shred of factual support in MLCS's submission, and

thus may not be accepted by the Court on MLCS's second motion to dismiss.[2]

---

[1] For example, MLCS asserts (i) that it still has "real and continuing exposure to LCH on its corresponding legs of the same trades," MLCS Br. at p.5, *see also id*. at pp.8, 15; (ii) "because of the expiration of the applicable statute of limitations . . . MLCS likely will have no ability to subsequently recover those payments from LCH," MLCS Br. at p.5, *see also id*. at p.16; and (iii) "LBSF's portfolio of trades, including its positions in the Disputed Transactions, was auctioned off by LCH and ultimately acquired by an unaffiliated LCH member, which now stands in LBSF's shoes in respect of the LBSF/LCH Trades."  MLCS Br. at pp.7-8.  (As used herein, citations to the "MLCS Br." refer to the Memorandum of Law in Support of MLCS's Motion To Dismiss Counts I, II and III of the LBSF Adversary Complaint, filed on February 26, 2015 (Dkt. No. 17).  Unless otherwise noted herein, references to "Dkt. No. __" refer to electronic case filings in the above-captioned adversary proceeding.).

[2] Similarly, MLCS injects an additional fact issue when it again relies upon the *current* LCH regulations in support of its motion.  *See, e.g.*, MLCS Br. at p.5 & n.14.  As LBSF pointed out on MLCS's *prior* motion to dismiss, the only potentially applicable LCH regulations would be those existing in 2008 (*i.e.*, during the relevant time), not the *current* LCH regulations, which creates an issue of fact concerning what LCH regulations were extant in 2008. Again, MLCS has provided the Court with absolutely no factual information in that regard, but instead would have the Court improperly *assume* that the current LCH regulations are the same as those that existed in 2008.

MLCS's brief struggles to explain why LCH would be a "required" and "indispensable" party to *non-contractual* (*i.e.*, quasi-contract) claims asserted by LBSF against MLCS, which merely seek money damages against MLCS and thus do not involve LCH at all. Because MLCS cannot do so under controlling case law, MLCS instead changes the nature of LBSF's claims and contends that "at its core the relief that LBSF seeks is actually much closer to rescission than to restitution." MLCS Br. at 4. But LBSF is *not* seeking rescission. Indeed, there is nothing to rescind. As set forth in the Complaint, "**no original contract existed for the Erroneous Transactions**." Dkt. No. 1, Complaint ("Complaint" or "Compl.") ¶ 15 (emphasis added). And as MLCS's counsel conceded at oral argument on October 7, 2014 on the prior motion to dismiss, there were *no contracts* governing the Erroneous Transactions when MLCS sought to register them with LCH. *See* Dkt. No. 11, Transcript of October 7, 2014 Hearing ("10/7/2014 Tr."), at p. 88:1-6.

The Complaint alleges that MLCS invented fictitious trades with LBSF that resulted in approximately $21 million of cash collateral being moved from LBSF to MLCS. Moreover, MLCS was aware of the fictitious nature of the trades in July 2008, and contacted LBSF directly to retrieve a $1.6 million payment that MLCS had made to LBSF concerning the fictitious trades, yet remained silent concerning the movement of the $21 million in cash collateral in MLCS's favor, and did nothing to correct the situation. MLCS's *second* motion to dismiss is directed to the three quasi-contract claims regarding the $21 million in cash collateral, but is *not* seeking to dismiss the three quasi-contract claims relating to the $1.6 million payment, so those claims will continue in this Court regardless. The irony, of course, is that by seeking to dismiss the three quasi-contract claims that seek recovery of the $21 million in cash collateral, MLCS is proposing

piecemeal litigation in different forums on claims arising from the same factual background, which is the *opposite* of the policy reason behind Rule 19 in the first place.

In any event, MLCS's focus on purported contracts between it and LCH provides no basis for dismissal of LBSF's quasi-contract claims relating to the $21 million in cash collateral. Clear and controlling Second Circuit authority (not cited by MLCS in its brief) holds that a potential liability on *another* contract does *not* provide a basis for finding a non-party to be a required party under Rule 19. *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377 (2d Cir. 2006).[3]  In this case, LBSF can obtain complete relief against MLCS without LCH's presence as LBSF is seeking only money damages against MLCS.  As the Second Circuit clearly held in *Mastercard*, the speculation by MLCS that a ruling in favor of LBSF may lead to *future* litigation involving LCH does *not* constitute grounds for dismissal under Rule 19 as a matter of law.  *Id*. at 385.

The facts of this situation are even stronger than those in *Mastercard* because, in that case, the non-party VISA *actually sought to intervene and assert its rights under Rule 19*.  Yet, even with the non-party appearing to object, the Second Circuit *still* affirmed the denial of the motion.  Here, LCH has *not* sought to intervene or to have this case dismissed for failure to join it as a party.  Thus, there is *no evidence* that the non-party LCH is "claim[ing] an interest relating to the subject matter of the action" within the meaning of Rule 19(a).  MLCS's unsupported

---

[3] In *MasterCard*, Mastercard sued defendant FIFA, soccer's international governance organization, claiming that FIFA violated Mastercard's right of first refusal in subsequently granting sponsorship rights to the World Cup to VISA.  471 F.3d at 380-81.  VISA sought to intervene in the District Court and sought dismissal under Rule 19 on the grounds that it was a necessary and indispensable party because of VISA's contractual entitlement to the FIFA sponsorship rights.  *Id*. at 384.  The Second Circuit affirmed the District Court's ruling that VISA was *not* a necessary party under Rule 19(a) because (i) complete relief could be afforded to Mastercard without VISA's presence, even if that might lead to subsequent litigation between FIFA and VISA, *id*. at 385, (ii) the FIFA-VISA contract was *not* the contract at issue in the Mastercard litigation, *id*. at 386, and (iii) the potential harm to VISA was not caused by its absence from the litigation, but rather from FIFA's alleged conduct in awarding VISA sponsorship rights that FIFA legally could not give.  *Id*. at 387.
.

3

speculation that LCH *is* claiming such an interest is woefully insufficient to support a Rule 19

motion. *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) ("It is the absent party

that must 'claim an interest'"); *see also Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 140 (2d Cir.

2002) ("for [a non-party] to be considered 'necessary," there must be more than an unsupported

assertion that [the non-party] has a claim to that interest.").

Because MLCS cannot sustain *its burden* on this motion of demonstrating either (i) that

complete relief cannot be afforded LBSF in the absence of LCH, or (ii) that non-party LCH

"claims an interest relating to the subject of the action" within the meaning of Rule 19(a), LCH is

not a "required" party under Rule 19(a) and the motion must be denied on that basis alone.

*MasterCard*, 471 F.3d at 389. This case does not remotely present the "*exceptional*

*circumstances* in which the plaintiff's choice of parties or forum must give way because of an

absent party's interest in the outcome of the action or involvement in the underlying dispute."

*Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 131 (2d Cir. 2013) (emphasis added). These

reasons, and additional bases to deny the motion, are set forth in more detail below.

## FACTUAL BACKGROUND

**A.** **The Complaint**[4]

On or about June 13, 2008, MLCS erroneously identified two non-existent interest rate

swaps (the "Erroneous Transactions") and sought to process them, as though they were live

trades with LBSF, though LCH, an independent clearing house. Compl. ¶ 2. By submitting the

data, MLCS represented to LCH and LBSF that it had two live U.S. dollar interest rate swaps

---

[4] The allegations in the Complaint, which must be accepted as true on a motion to dismiss, are summarized briefly in this factual background. In its motion papers, MLCS seeks to inject numerous "facts" into this motion that are not contained in the Complaint and are not supported by any proper factual submission, and thus are not properly before the Court.

with LBSF as the counterparty.  *Id.* ¶ 14.  However, there is no evidence properly before the

Court that any swap agreement was in force with respect to the Erroneous Transactions, and the

allegations in the Complaint are to the contrary.  *Id.* ¶ 15 ("no original contract existed for the

Erroneous Transactions").  Indeed, during argument on an earlier motion to dismiss, counsel for

MLCS agreed with the Court "that there were no real underlying documents" that governed the

transactions.  *See* 10/7/2014 Tr. at p. 88:1-6.

　　Although never the subject of an agreement between MLCS and LBSF, LCH continued

to treat the Erroneous Transactions as "live" in accordance with MLCS's submission of

erroneous data.  Compl. ¶ 18.  This produced a series of improper collateral transfers and

payment flows, which, in the aggregate, totaled more than $21 million and were to the benefit of

MLCS and to the detriment of LBSF.  *Id.* ¶¶ 18, 25.[5]  Between June 16, 2008 and September 12,

2008, (i) LBSF paid $26,549,196 in margin payments in respect to the first Erroneous

Transaction ("<u>LBSF's Improper Collateral Payments</u>") and (ii) MLCS paid $5,525,156 in initial

and Variation Margin in respect to the second Erroneous Transaction ("<u>MLCS's Improper

Collateral Payments</u>").  *Id.* ¶ 24.  At the same time, MLCS received a corresponding credit in its

margin account with respect to the first Erroneous Transaction, and LBSF received a

corresponding credit in its margin account for the second Erroneous Transaction.  *Id.*  When

LBSF's Improper Collateral Payments and MLCS's Improper Collateral Payments are netted

against each other, LBSF paid $21,024,040 in margin payments in respect of the Erroneous

Transactions and MLCS received corresponding credits (the "<u>Improper Collateral

Adjustments</u>").  *Id.*  The Improper Collateral Adjustments to LBSF's margin account with LCH

---

[5] The Erroneous Transactions mimicked the economic terms of two earlier terminated swap transactions between
LBSF and MLCS (the "<u>Similar Transactions</u>").  *Id.* ¶ 21.  On or about April 18, 2008, the Similar Transactions were
terminated by mutual agreement of LBSF and MLCS, which required LBSF to make a close out payment to MLCS,
on a net basis, of $19,148,237.  *Id.*

thus resulted in a "pass through" and credit to the MLCS margin account of approximately $21 million.  *Id.* ¶ 25.

Even though LCH was mistakenly treating the trades as live, after MLCS had made a payment in July 2008 of approximately $1.6 million for LBSF's benefit with respect to one of the Erroneous Transactions, MLCS emailed LBSF that the payment had been made in error because the trades were not live, and requested its immediate return outside of the LCH process. *Id.* ¶¶ 26-28.  Having no internal record of the Erroneous Transactions, LBSF reasonably relied upon MLCS's representation that the payment was an error and promptly returned the money directly to MLCS, as requested (the "July 2008 Payment").  *Id.* ¶ 29.

Despite MLCS's recognition of the error in July 2008, MLCS failed and refused, and continues to refuse, to return to LBSF the $21 million in cash collateral.  *Id.* ¶ 5. Notwithstanding MLCS's acknowledgement in July 2008 that at least one of the Erroneous Transactions was not live, MLCS did not ensure that its prior erroneous information submitted to LCH regarding the Erroneous Transactions was undone.  *Id.* ¶ 30.  There is no doubt that MLCS received $21 million that belonged to LBSF.  *Id.* ¶ 5.  It would be unjust for MLCS to retain LBSF's money and, as a matter of equity, MLCS should not be permitted to keep it.  *Id.*

If this Court determines that MLCS has no obligation to return to LBSF the improper collateral transfer of $21 million, MLCS must repay LBSF, at a minimum, the $1.6 million (plus interest) that LBSF returned to MLCS in July 2008 that related to the Erroneous Transactions, and had nothing whatsoever to do with LCH.  *Id.* ¶ 6.

**B.**     **The Rule 12(b)(6) Motion to Dismiss**

On July 31, 2014, MLCS filed a motion seeking dismissal of the Complaint on a number of grounds, including an argument that LBSF's allegations supporting its quasi-contract claims against MLCS were insufficient (Dkt. No. 5, "12(b)(6) Motion").  In support of that argument,

MLCS asserted that LCH's role as intermediary barred claims against MLCS as a matter of law. *See* Dkt. No. 6, Memorandum of Law in Support of 12(b)(6) Motion (the "12(b)(6) Br.") at pp. 21-22.  LBSF filed a timely opposition to the 12(b)(6) Motion on September 5, 2014.  Dkt. No. 9.

At the October 7, 2014 hearing on the 12(b)(6) Motion, MLCS's counsel made a number of factual assertions regarding the Erroneous Transactions and LCH's position as intermediary. For example, MLCS admitted that there were no governing contracts that existed between MLCS and LBSF for the two transactions.  *See* 10/7/2014 Tr. at p. 88:1-6.

> THE COURT:  . . . .  The answer is that there were no actual real underlying documents, but you could discern the terms of the transaction by reference to the documents that governed the similar transaction.
> [MLCS's Counsel]:  That's right. . . .

*Id.*  Thus, MLCS submitted the Erroneous Transactions to LCH notwithstanding their lack of contractual existence.  Yet, according to MLCS, MLCS's improper submission to LCH essentially freed MLCS of liability – even though there was no enforceable agreement between LBSF and MLCS at the time of the submission.

> [MLCS's Counsel]:  . . . Once the trades are registered with LCH . . . , it stands between the two former counterparties with each other, and what is created in that circumstance are two separate new contracts.  It's, in effect, [a] [n]ovation. . . .

*Id.* at p. 84:9-14.  According to MLCS, it is not subject to suit notwithstanding that the trades never legitimately existed and should never have been submitted to LCH.  Rather, LCH, the intermediary enlisted by MLCS, would be the liable party, according to MLCS.

> [MLCS's Counsel]:  . . . Then the remedy is not to sue us.  It's to seek rescission of their agreement, that leg of the no[v]ated transaction that constitutes their agreement with LCH.  They didn't do that.  They still have -- they have until the petition date a live transaction with LCH. . . .

*Id.* at p. 119:5-10.  The Court did not accept MLCS's argument and declined to dismiss LBSF's

claims against MLCS.  *See* Dkt. No. 12.

In addition, MLCS's counsel made certain other statements at the prior oral argument that

may be relevant to MLCS's current Rule 19 Motion.  When asked whether MLCS had claims

against LCH, MLCS's counsel denied that it did:

> THE COURT:   . . . I'm a little perplexed.  Might not you bring in LCH as a third
> party defendant?
> [MLCS's Counsel]:  Why would we?  We're – we don't have a beef with LCH. . .
> .

10/7/14 Hr'g Tr. at p.119:18-22.  Moreover, while MLCS's counsel argued that rescission is

LBSF's sole remedy, he further conceded that LBSF may not have an agreement with LCH for

which it could even seek rescission:

> [MLCS's Counsel]:  . . . We have no complaint with LCH.  We still have a live
> agreement with them.  They [LBSF] don't.  But they say they're owed money.
> They should have sought to rescind that agreement instead of suing us.  Who
> knows if they still can. I don't know. . . .

*Id*. at p. 120:8-12.

## C.    The Second Motion to Dismiss

On February 26, 2015, MLCS filed a *second* motion to dismiss, relying on failure to join

LCH, an alleged "required" party under Rule 19 (Dkt. No. 16, the "Rule 19 Motion").  The

motion, which is not supported with affidavits, repeats much of the 12(b)(6) Motion, although it

alleges that LCH has an important interest in this matter.  Specifically, MLCS focuses on a

hypothetical rescission claim against LCH that it asserts LBSF must bring as "evidence" that

LCH is a required party, which MLCS concedes it previously "discussed" in its prior motion to

dismiss.  *See* MLCS Br. at p. 4 ("as discussed in connection with the Rule 12(b)(6) Motion, . . .

the relief that LBSF seeks is actually much closer to rescission than to restitution").  In fact, the

hypothetical rescission claim was not only discussed, but raised as a basis to dismiss LBSF's

quasi-contract claims.  *See* 12(b)(6) Br. at p. 27.  Nonetheless, the Court denied MLCS's

12(b)(6) Motion.

        In addition to rehashing prior argument, the Rule 19 Motion improperly introduces fact

issues, some of which contradict MLCS's previous statements.  For example, MLCS previously

contended that it had a live agreement with LCH but that it had no grounds to assert a claim

against LCH.  10/7/14 Hr'g Tr. at p. 120:7-12.  The Rule 19 Motion, however, now asserts that if

this Court were ultimately to conclude that the Erroneous Transactions were improper and

supported a claim for restitution against MLCS, that ruling would be legally and factually

"determinative" as to the existing transactions involving LCH.  MLCS Br. at p. 4.  What legally

and factually "determinative" means is later revealed to be potential litigation by MLCS against

LCH.  *Id*. at pp. 16-17.  MLCS essentially equates its potential exposure to LBSF under quasi-

contract theories for having initiated the fictitious trades with an undefined and speculative claim

related to MLCS's transactions with LCH.  Yet, MLCS neither makes an effort to identify what

those speculative claims entail nor does it explain how LCH is at risk from them should LBSF

succeed in this case.

**ARGUMENT**

**I.**      **Applicable Pleading Standard on MLCS's**
         **Motion to Dismiss Under Rule 12(b)(7)**

        Rule 12(b)(7) permits a defendant to move to dismiss a complaint for failure to join a

required party under Rule 19 and may be brought even after a responsive pleading has been filed.

However, a trial court is entitled to consider a party's delay in submitting such a motion when

exercising its discretion in granting or denying it.  *See Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l*

*Bank*, 659 F.2d 234, 242 (D.C. Cir. 1981); *see also Marvel Characters, Inc. v. Kirby*, 726 F.3d

9

119, 132 & n.3 (2d Cir. 2013) (appellate review of a trial court decision on a Rule 19 motion is subject to an abuse of discretion standard).

Although Rule 19 was amended in 2007, with the word "required" replacing the former word "necessary," and with the word "indispensable" altogether deleted from the text, the Supreme Court has stated that "the substance and operation of the Rule both pre- and post-2007 are unchanged . . . ." *Republic of the Philippines v. Pimentel*, 553 U.S. 851, 855-56 (2008). Despite the change in nomenclature, some courts have continued to use the traditional word "indispensable" in their analysis. *See, e.g., Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 132 (2d Cir. 2013); *CP Solutions PTE, Ltd. v. Gen. Electric Co.*, 553 F.3d 156, 159 n.2 (2d Cir. 2009) (per curiam).

Rule 19(a)(1) currently provides as follows:

**Rule 19.  Required Joinder of Parties**

(a) **Persons Required to Be Joined if Feasible**.

    (1) ***Required Party***.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

        (A)    in that person's absence, the court cannot accord complete relief *among existing parties*; or

        (B)    *that person claims an interest* relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

            (i)    as a practical matter impair or impede the person's ability to protect the interest; or

            (ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1) (emphasis added). If a non-party is not "required" to be joined under

Rule 19(a)(1), the inquiry ends, and the motion to dismiss for failure to join a required party

must be denied. *MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n.*, 471 F.3d 377, 389 (2d Cir.

2006); *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 139 (2d Cir 2002).

However, if the Court determines that a non-party is a "required" party within the

meaning of Rule 19(a)(1), it proceeds to consider the equitable factors contained in Rule 19(b) to

determine whether the case can continue without the joinder of the non-party. Rule 19(b)

currently provides as follows:

> (b) **When Joinder Is Not Feasible**. If a person who is required to be joined if
> feasible cannot be joined, the court must determine whether, in equity and
> good conscience, the action should proceed among the existing parties or
> should be dismissed. The factors for the court to consider include:
>
> > (1)    the extent to which a judgment rendered in the person's
> > absence might prejudice that person or the existing parties;
> >
> > (2)    the extent to which any prejudice could be lessened or
> > avoided by:
> > > (A)    protective provisions in the judgment;
> > > (B)    shaping the relief; or
> > > (C)    other measures;
> >
> > (3)    whether a judgment rendered in the person's absence would
> > be adequate; and
> >
> > (4)    whether the plaintiff would have an adequate remedy if the
> > action were dismissed for non-joinder.

Fed. R. Civ. P. 19(b). "'The party moving for joinder bears the burden of demonstrating that

these conditions exist.'" *Third Ave. Trust v. SunTrust Bank*, 163 F. Supp. 2d 215, 218 (S.D.N.Y.

2001) (citation omitted). Conclusory allegations made without supporting documentation are

insufficient to sustain a motion pursuant to Rule 12(b)(7). *See In re Caesars Palace Sec. Lit.*,

360 F. Supp. 366, 395 (S.D.N.Y. 1973).

11

For the reasons set forth below, MLCS has failed to satisfy *its burden* of demonstrating that LCH is a required party under any of the elements of Rule 19(a)(1), or that any purported inability to join LCH as a party warrants dismissal under Rule 19(b), even if it had been a required party.

## II.    MLCS Has Failed to Meet Its Burden of Proof That LCH Is a Required Party Under Rule 19(a)

LBSF can obtain complete relief against MLCS within the meaning of Rule 19(a)(1)(A) without joining LCH as a party because LBSF is asserting only quasi-contract claims against MLCS and is seeking only money damages (*i.e.*, LBSF is not seeking declaratory or injunctive relief, nor specific performance).  Moreover, LCH has *not* "claim[ed] an interest relating to the subject matter of this action" within the meaning of Rule 19(a)(1)(B), and there is *no evidence* that it has.  MLCS's unsupported speculation that LCH *is* claiming such an interest is woefully insufficient to support a Rule 19 motion.  *Peregrine Myanmar v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) ("It is the absent party that must 'claim an interest'"); *see also Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 140 (2d Cir. 2002) ("for [a non-party] to be considered 'necessary," there must be more than an unsupported assertion that [the non-party] has a claim to that interest").

## A.    The Parties to This Action Can Obtain Complete Relief Without Joinder of LCH

MLCS argues that LCH is a required party under Rule 19(a)(1)(A) because a judgment in LBSF's favor supposedly would not provide complete relief to the parties to this action.  MLCS Br. at pp. 10-12.  However, under Rule 19(a)(1)(A), "complete relief can be accorded" as long as the absent party is not required "to do anything or change any of its positions."  *Peregrine Myanmar v. Segal*, 89 F.3d 41, 48 (2d Cir. 1996); *Tweed-New Haven Airport Auth. v. Town of E. Haven*, No. 3:08-cv-597, 2008 U.S. Dist. LEXIS 118085, at *8 (D. Conn. Aug. 8, 2008).  "The term complete relief refers only to relief as between the persons already parties, and not as

between a party and the absent person whose joinder is sought." *Cmty. Health Care Ass'n v. Mahon*, 106 F. Supp. 2d 523, 530 (S.D.N.Y. 2000) (finding non-party State was not required under Rule 19 where "[t]he granting of the relief sought by plaintiffs requires nothing of the State and imposes no new obligations on the State"). This is the case even where further litigation based on the same subject matter is anticipated between the defendant and a non-joined party. *See MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n.*, 471 F.3d 377, 385 (2d Cir. 2006) ("While there is no question that further litigation between [defendant and non-party] is inevitable if MasterCard prevails in this lawsuit, Rule 19(a)(1) is concerned only with those who are already parties."). MLCS has failed to demonstrate that a judgment in LBSF's favor would not provide complete relief to the parties to this action.[6]

The Second Circuit's controlling decision in *MasterCard*, discussed previously (supra p. 3), holds that a potential liability on *another* contract does *not* provide a basis for finding a non-party to be a necessary party under Rule 19. *Id.* at 386-87. The speculation by MLCS that a ruling in favor of LBSF may lead to *future* litigation involving LCH does *not* constitute grounds for dismissal under Rule 19 as a matter of law. *Id*. at 385.

**B.     LCH Has No Interest That May Be Impaired, and MLCS Is Not
        at Risk for Multiple or Inconsistent Rulings as a Result of LCH's Absence**

Rule 19(a)(1)(B) requires that MLCS identify an interest that *LCH is asserting* relating to the subject matter. Here, LCH has *not* sought to intervene or to have this case dismissed for failure to join it as a party. Thus, there is *no evidence* that the non-party LCH is "claim[ing] an

---

[6] MLCS argues that it is a "necessary predicate for the Court to hold that the contracts governing the trades are unenforceable." *See* MLCS Br. at p. 11. Essentially, MLCS is rearguing its prior 12(b)(6) Motion, where it unsuccessfully asserted that because there may have been agreements involving LCH and the parties, the quasi-contract claims cannot stand. In any event, as set forth in detail in Section II B, *infra*, a ruling that MLCS is liable under quasi-contract law does not result in any impairment of LCH's rights under its purported agreements with MLCS.

interest relating to the subject matter of the action" within the meaning of Rule 19(a)(1)(B).

MLCS's unsupported speculation that LCH *is* claiming such an interest is woefully insufficient

to support a Rule 19 motion. *Peregrine Myanmar v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) ("It is

the absent party that must 'claim an interest'"); *see also Jonesfilm v. Lion Gate Int'l*, 299 F.3d

134, 140 (2d Cir. 2002) ("for [a non-party] to be considered 'necessary," there must be more

than an unsupported assertion that [the non-party] has a claim to that interest").

### 1.    LCH Has No Interest in This Action

As a preliminary matter, MLCS suggests that a judgment against it for the Erroneous

Transactions implicates the interests of LCH because it somehow threatens the existing contracts

MLCS may have with LCH.  However, MLCS offers no evidence that LCH, in fact, "claims an

interest relating to the subject of the action." *Peregrine Myanmar v. Segal*, 89 F.3d 41, 49 (2d

Cir. 1996) ("Segal's attempt to assert on behalf of the Ministry its supposed concern about the

dilution of its interest in MAFCO falls outside the language of the rule.  It is the absent party that

must 'claim an interest.'").  Indeed, MLCS cannot assert LCH's interest for it.  *See Third Ave.*

*Trust*, 163 F. Supp. 2d at 219 ("the Second Circuit has explained that 'subparts (i) and (ii) [of

Rule 19(a)(2)] are contingent . . . upon an initial requirement that the absent party claim a legally

protected interest relating to the subject matter of the action.  While [non-party] may have

objected to [plaintiff and defendant's] claims, it has not asserted a legal interest in the action.

[Defendant's] attempt to assert such an interest on [non-party's] behalf falls outside the language

of the rule.") (first alteration in original) (internal quotation marks and citation omitted); *Barbata*

*v. Latamie*, No. 11-cv-7381, 2012 U.S. Dist. LEXIS 77312, at *4 (S.D.N.Y. June 4, 2012)

("With respect to the second prong of Rule 19(a), 'there must be more than an unsupported

assertion that [the non-joined party] has a claim to that interest.").

14

Unlike the instant action, the cases relied upon by MLCS are breach of contract actions where each of the plaintiff, defendant, and non-party were parties to the contract in dispute.  *See* MLCS Br. at 9-10 (citing *Davidson Well Drilling, Ltd. v. Bristol-Myers Squibb Co.*, No. 09-cv-1431, 2009 U.S. Dist. LEXIS 60980 (S.D.N.Y. July 15, 2009); *Hovensa, L.L.C. v. Technip Italy S.p.A.*, No. 08-cv-1221, 2009 U.S. Dist. LEXIS 21191 (S.D.N.Y. Mar. 16, 2009); *Global Detection & Reporting, Inc. v. Securetec Detektions-Systeme AG*, No. 08-cv-5441, 2008 U.S. Dist. LEXIS 95038 (S.D.N.Y. Nov. 21, 2008); *Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369 (S.D.N.Y. 2000); *Global Disc. Travel Servs., LLC v. TWA*, 960 F. Supp. 701 (S.D.N.Y. 1997)).

For example, in *Global Discount Travel Services*, the court held that a non-party was necessary to the action where the plaintiff's rights under the contract arose from the "same essential subject matter" as non-party's rights "*under the exact same contract*."  960 F. Supp. at 708 (emphasis added).  Likewise, in *Ryan*, the court held that in a breach of contract action, a non-party to the action who was a party to all three agreements at issue was a necessary party, while an individual who was not a party to the contract at issue was not required under Rule 19(a) and need not be joined.  107 F. Supp. 2d at 387-88, 390-91.  Here, there is no contract at issue between MLCS and LBSF, and LBSF's claims center around MLCS's extra-contractual misconduct.  That there *may be* an existing contract *between MLCS and non-party LCH*, is not only speculative, but also irrelevant to this analysis.

Additionally, the cases to which MLCS cites relied on various factors warranting dismissal that are not present in the instant action.  For example, in *Davidson*, the court noted that the plaintiff initially filed an action against the defendant *and the non-party*, but after acknowledging that the non-party destroyed diversity jurisdiction, it filed an amended complaint dropping the non-party and omitting any references to it.  2009 U.S. Dist. LEXIS 60980, at *4-5.

15

Further, in that case, "the conduct of [the non-party was] the focus of the litigation." *Id.* at *20. Finally, the Court noted that there was a concurrent action pending in Puerto Rico brought by the non-party against the plaintiff, and found that "allowing two actions to proceed [concurrently] is inefficient and a waste of judicial resources." *Id.* at *23. Further, in *Global Detection & Reporting*, the complaint sought a permanent injunction which would enjoin the non-party from selling certain products. 2008 U.S. Dist. LEXIS 95038, at *6.

MLCS's argument that "a judgment in LBSF's favor would merely reverse certain transfers made during a short snapshot in time over the life of the [Erroneous] Transactions," MLCS Br. at p. 12, is a mischaracterization of the relief that LBSF seeks. A judgment in LBSF's favor would grant it money damages against MLCS, and LCH's risk in its purported contracts with MLCS absent joinder remains unchanged. Likewise, MLCS's argument (and the cases cited in support thereof)[7] that "where a party seeks to rescind a contract under Rule 19 all parties to that contract are generally required parties," MLCS Br. at 10, has no bearing on this action. LBSF is *not* seeking rescission. Indeed, there is nothing to rescind. As set forth in the Complaint, "***no original contract existed for the Erroneous Transactions***." Compl. ¶ 15 (emphasis added). Indeed, MLCS agreed at the October 7, 2014 hearing that there were no contracts governing the Erroneous Transactions when MLCS first submitted them to LCH. *See* 10/7/2014 Tr. at p. 88:1-6.

### 2.    *LCH Will Not Lose Its Ability to Protect Its Interests if Not Present*

Under Rule 19(a)(1)(B)(i), a required party is one not only with an interest in the litigation, but one that would lack the ability to protect its interests if it were not joined. *See MasterCard*, 471 F.3d at 387. The fact that there may be some impairment of that interest is

---

[7] *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) (cited at MLCS Br. at 10); *Z & B Enters. v. Tastee-Freez Int'l, Inc.*, 162 F. App'x 16, 20 (1st Cir. 2006) (cited at MLCS Br. at p. 11).

insufficient; rather, the impairment must be *caused by* the party's absence. *See id.* ("Thus, while Visa may have an interest that would be impaired by the outcome of this litigation, Visa still does not qualify as a necessary party . . . because the harm Visa may suffer is not *caused by* Visa's absence from this litigation. Any such harm would result from FIFA's alleged conduct in awarding Visa sponsorship rights it could not legally give.") (emphasis in original). Here, it was MLCS's efforts to process the Erroneous Transactions to LCH that created any potential harm, not the fact that LCH is not a party to LBSF's clam seeking restitution from MLCS.

MLCS's unsupported contention that purportedly existing contracts between LCH and MLCS may be impacted – even if true – is also not a basis to conclude that LCH is a required party. Second Circuit precedent establishes that speculative impact on a separate agreement involving a non-party does not warrant dismissal under Rule 19, noting that holding otherwise

> would be significantly broadening both Rule [19(a)(1)(B)(i)] and the principle discussed in *Crouse–Hinds* if we found that because the outcome of this case may impact a separate contract involving a different party, that finding would transform the action into 'an action to set aside a lease or a contract. . . .' *Crouse–Hinds* involved an actual action to set aside a contract; here we have an action that *could in the future impact a third party's rights under a separate contract*. We, therefore, do not find *Crouse–Hinds* controlling here and decline to broaden its scope to reach the facts before us, particularly since doing so would read a key element out of the text of Rule [19(a)(1)(B)(i)].

*Id.* (emphasis added).

### 3. There Is No Risk of Inconsistent Obligations as a Result of LCH's Absence

MLCS asserts that LCH's absence creates the possibility that MLCS may have to pay LBSF, and then speculates that it may then be too late for MLCS to be able to recover from LCH. MLCS Br. at p. 5. Interestingly, MLCS previously advised the Court that it knew of no claims it had against LCH. *See* 10/7/14 Hr'g Tr. at 119:21-22; 120:8-9. In any event, MLCS

offers nothing other than speculations concerning how a ruling by this Court could give rise to such claims against LCH or why such claims may be too late.

Most importantly, the cause of MLCS's alleged exposure or inconsistent results *has nothing to do with the absence of LCH as a party*.  Any exposure to MLCS at issue arises from its initiation of the Erroneous Transactions.  Again, the Second Circuit has ruled that the risk to the party must arise *from the absence of the non-party*, not from actions it took that created the claim:

> FIFA's risk of multiple obligations to different parties is not a result of Visa's absence in this lawsuit; it is the result of FIFA allegedly breaching its contract with MasterCard and awarding Visa sponsorship rights it was contractually prohibited from granting.  Visa's presence in this lawsuit will not remedy that fact.  Whether Visa is or is not a party in the underlying lawsuit, FIFA and Visa will litigate *their* dispute under *their* contract later on down the road if MasterCard prevails here. Visa cannot re-litigate and undo a finding in this case that the MasterCard Contract contains a right of first refusal or that FIFA breached its contract with MasterCard since these issues admittedly have nothing to do with Visa.

*MasterCard*, 471 F.3d at 388 (emphasis in original).  Assuming that MLCS's unverified factual assertions are true, MLCS remains a party to trades with LCH that will either turn a profit or a loss depending on economic circumstances unrelated to this action.  MLCS's own margin posted with LCH will not change as a result of the litigation with LBSF, even if LBSF is successful. The only potential outcome is that MLCS will have to pay for the value of the collateral it improperly caused LBSF to transfer through MLCS's erroneous submission of non-existent trades to LCH.

Accordingly, LCH does not qualify as a "required" party under Rule 19(a), and thus, the Court need not decide whether its absence warrants dismissal under Rule 19(b).  *MasterCard*, 471 F.3d at 389; *William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co.*, No. 07-cv-10639, 2009 U.S. Dist. LEXIS 21818, at *23 (S.D.N.Y. Feb. 23, 2009).

18

**III.    Even If, *Arguendo*, LCH Is a Required Party, But Its Joinder Is
Not Feasible, the Court Should Not Dismiss the Complaint**

Under Rule 19(b), "[i]f a person is required under Rule 19(a) but cannot be joined, 'the

district court must determine whether the claim should be dismissed because the necessary party

is indispensable.'" *Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 258 (S.D.N.Y. 2010).

Even all parties to the same contract are not necessarily considered "indispensable" under Rule

19(b). *See CP Solutions PTE, Ltd. v. General Electric Co.*, 553 F.3d 156, 159 (2d Cir. 2009)

(per curiam) (The District Court "adopted a bright-line rule that all parties to a contract are

indispensable. Such a rule is inconsistent with Rule 19(b)'s flexible standard").

Rule 19(b) contains a "nonexclusive" list of considerations, but "the general direction is

whether 'in equity and good conscience, the action should proceed among the existing parties or

should be dismissed.'" *Philippines*, 553 U.S. at 862 (quoting Rule 19(b)). The factors listed in

Rule 19(b) are as follows:

(1) the extent to which a judgment rendered in the person's absence might
prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided . . . ;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were
dismissed for nonjoinder.

Fed R. Civ. P. 19(b). "The Second Circuit has instructed district courts to take a 'flexible

approach' to the Rule 19(b) analysis and has concluded that 'very few cases should be

terminated due to the absence of . . . parties unless there has been a reasoned determination that

their nonjoinder makes just resolution of the action impossible.'" *Fed. Ins. Co.*, 758 F. Supp. 2d

at 259 (citation omitted) (addressing Rule 19(b) in a case involving diversity jurisdiction). "The

moving party has the burden of producing evidence showing the nature of the interest possessed .

19

. . and that the protection of that interest will be impaired by the absence." *William A. Gross*

*Constr. Assocs.*, 2009 U.S. Dist. LEXIS 21818, at *28-29 (internal quotation marks and citation

omitted).

MLCS has not even attempted to carry its burden under Rule 19(b) and has failed to

submit *any* factual material on this motion from which this Court could even begin to make the

equitable determinations required under Rule 19(b).  And the factual assertions it does make in

its brief are completely unsupported.  *See supra* p. 1, fn. 1 & 2.  Therefore, MLCS has failed to

establish that LCH is an indispensable party under any of the four factors typically considered by

the Court in a Rule 19(b) determination.  Despite the lack of any factual predicate for MLCS's

arguments, LBSF responds to them below anyway.

First, MLCS argues that a judgment in LBSF's favor in the absence of LCH would

"unduly and unfairly prejudice" [MLCS] because such a judgment would essentially "rescind the

[Erroneous] Transactions," but would not relieve MLCS from its "continuing obligations to

LCH."  MLCS Br. at p. 15.  MLCS further argues that it "could not avail itself of this Court's

determination that the Disputed Transactions were invalid in any subsequent proceeding against

LCH," and that even if it could use such a determination to obtain relief against LCH, "it will

almost certainly be time-barred from doing so."  MLCS Br. at p. 16.

The Court's analysis of Rule 19(b)(1) "overlaps considerably with the Rule 19(a)

analysis, as both require the Court to determine the potential for prejudice to existing and absent

parties."  *See Errico v. Stryker Corp.*, 281 F.R.D. 182, 187 (S.D.N.Y. 2012) (citing 7 Charles

Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1608, at 92

(3d ed. 2001, rev. 2010)).  As discussed previously, LBSF does not seek to rescind the Erroneous

Transactions, but rather seeks money damages against MLCS for the amounts by which MLCS

has been unjustly enriched.  As such, complete relief can be accorded among LBSF and MLCS

without joinder of LCH.  *See Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 312

F.3d 82, 88 (2d Cir. 2002) (dismissal of a claim under Rule 19(b) "is not warranted where

complete relief is available from a remaining party").  Further, MLCS has failed to identify any

conceivable claims it may have against LCH, or why such claims would "almost certainly" be

time barred.  Accordingly, at best, "any such prejudice [to MLCS] seems 'remote and minor,'

rather than 'immediate and serious.'"  *Certain Underwriters at Lloyd's of London v. Ill. Nat'l

Ins. Co.*, No. 09-cv-4418, 2012 U.S. Dist. LEXIS 141798, at *9-10 (S.D.N.Y. Sept. 24, 2012)

(citation omitted).

Second, MLCS argues that "no protective measure could conceivably alleviate or prevent

prejudice to [MLCS] resulting from a judgment in favor of LBSF."  MLCS Br. at p. 16.

Contrary to MLCS's conclusory assertions, the Court need not consider how it could fashion a

judgment to protect the interests of LCH or MLCS in light of LCH's absence because (i) MLCS

has failed to identify an interest to protect, and (ii) LBSF seeks monetary damages from MLCS

(not rescission or specific performance), which Courts routinely advocate as a remedy to prevent

any such prejudice to a non-party.  *See Philippines*, 553 U.S. at 870 (citing 7 Charles Alan

Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1608, at 106-110

(3d ed. 2001) (collecting cases using alternative forms of relief, including the granting of money

damages rather than specific performance [or] the use of declaratory judgment)).

Third, MLCS argues that any judgment in favor of LBSF rendered in LCH's absence

would be inadequate because it would require MLCS "to bring a subsequent action in the

appropriate forum against LCH to seek rescission of the Disputed Transactions."  MLCS Br. at p.

17.  As MLCS notes, the third factor under Rule 19(b), adequacy of a judgment in the absence of

a non-joined party, "refers to the public stake in settling disputes by wholes, whenever possible

and concern for judicial efficiency and avoiding multiple or piecemeal litigation." *2 Montauk

Highway LLC v. Global Partners LP*, 296 F.R.D. 94, 101 (E.D.N.Y. 2013) (internal quotation

marks omitted) (cited at MLCS Br. at p. 17).  "This factor concerns the social interest in the

efficient administration of justice and the avoidance of multiple litigation." *LCE Lux Holdco

S.A.R.L. v. Entretenimiento GM de Mex. S.A. DE.C.V.*, 287 F.R.D. 230, 238 (S.D.N.Y. 2012)

(internal quotation marks omitted).

   As set forth above, MLCS initially denied having any such claims (*see* 10/7/14 Hr'g Tr.

at 119:21-22; 120:8-9) and has also failed to identify any cause of action it would bring against

LCH in this hypothetical subsequent action.  Further, MLCS's Motion only seeks to dismiss

Counts I through III of the Complaint for failure to join a required party,[8] and yet MLCS argues

that a judgment in LBSF's favor would be inadequate, as it would have to bring a (speculative,

unidentified) claim against LCH in a subsequent action.  If MLCS were granted the relief it seeks

here, then Counts IV-VI of the Complaint would remain pending before this Court, while MLCS

apparently wants LBSF to bring Counts I-III against it in the courts of England, so that LCH, a

party with no claimed interest could participate in the proceedings.  This result would be directly

contrary to the purpose and intent Rule 19(b)(3), which seeks to "settl[e] disputes by wholes"

and avoid "multiple or piecemeal litigation." *2 Montauk Highway LLC*, 296 F.R.D. at 101 (cited

at MLCS Br. at p. 17).

   Fourth, MLCS concludes that dismissal of Counts I through III of the Complaint would

not deprive LBSF of a remedy, as it purportedly could bring those claims in the courts of

---

[8] MLCS concedes that Counts IV-VI are properly before this Court, and that LCH is not an indispensable party to
those claims.

England.  MLCS Br. at p. 17.  Contrary to MLCS's conclusions, LBSF, as plaintiff is entitled to

its choice of forum and litigation posture, particularly in light of MLCS's failure to demonstrate

that it would be prejudiced in any way by LCH's non-joinder.  *See Marvel Characters, Inc. v.*

*Kirby*, 726 F.3d 119, 134 (2d Cir. 2013) ("In light of the nearly non-existent showing of

prejudice to any of the parties involved here, we see no reason to permit [defendant] to withhold

consent to any suit in which the forum or litigation posture are not to their liking").  Further,

MLCS has failed to demonstrate that LBSF *could* bring its claims in the courts of England, nor

has it demonstrated that such claims would be timely under English law.  *See, e.g.*, *Zeebaas, LLC*

*v. Rober W. Koelewyn Danco Sports, Inc.*, No. 3:11-cv-11, 2011 U.S. Dist. LEXIS 122035, at

\*14 (D. Conn. Oct. 21, 2011) ("here the fact that [the non-party] resides abroad is an impediment

to Plaintiffs from being able to [bring suit against the non-party]"); *see also, e.g.*, *Ferguson v.*

*Hannover Ruckversicherungs-Akteiengesellschaft*, No. 04-cv-9254, 2007 U.S. Dist. LEXIS

61441, at \*51 (S.D.N.Y. Aug. 20, 2007) ("Under English Law, the applicable statute of

limitations [for tort or rescission claims based on fraud or non-disclosure] would be six years"

from discovery of the "fraud or non-disclosure").

　　　MLCS simply cannot avoid the realization that when it first initiated the Erroneous

Transactions with LCH, the potential for liability was created.  Until that moment, there was no

mechanism that could have resulted in the improper transfer of $21 million of LBSF's margin.

The fact that the Improper Collateral Adjustments may have been transferred through an

intermediary such as LCH is not grounds to dismiss the Complaint.  As noted with respect to the

12(b)(6) Motion, MLCS undoubtedly received a quantifiable benefit as a result of the Erroneous

Transactions.  The fact that it was indirect, or, more importantly, was in the form of the Improper

Collateral Adjustments, does not bar the claim.  Such a benefit is sufficient to sustain a quasi-

contract claim.  *See Mfrs. Hanover Trust Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 708 (1st Dep't

1990) ("It does not matter whether the benefit is directly or indirectly conveyed.  A person may

be unjustly enriched not only where he receives money or property, but also where he *otherwise*

*receives a benefit*") (emphasis added) (citation omitted).

<u>Finally</u>, MLCS makes much of the fact that it might be left "holding the bag" and have to

both pay LBSF for the Improper Collateral Adjustments and remain potentially liable for the

continued trades with LCH and/or LCH's counterparty.  Again, MLCS's speculation goes well

beyond the facts set forth in the Complaint.

The reading of the facts most favorable to LBSF is simple and direct.  MLCS initiated

trades for which LBSF never contracted.  In doing so, MLCS triggered some $21 million in

additional margin payments from LBSF that LBSF never agreed to make.  But for MLCS's

action in submitting the Erroneous Transactions to LCH, the $21 million would not have been

transferred, and that margin was ultimately transferred to or for the benefit of MLCS.  Since that

time, MLCS has essentially been engaged in risk-free trades, having been staked to $21 million

of LBSF's money.  All a restitution judgment would do is transfer risk from LBSF back to

MLCS, where it belongs.  For example, if MLCS is "in the money" today on those trades, it is

still in the money – just no longer in the money *and* up an additional $21 million.  If MLCS was

on the losing side of those trades, it actually has to recognize its position being the losing one – it

can no longer rely on a $21 million cushion from LBSF.

MLCS has failed to meet its burden of producing evidence that it would be impaired by

LCH's absence, thus "this case is not one of the 'very few cases' [that] should be terminated due

to the absence of" a non-party.  *Certain Underwriters at Lloyd's of London*, 2012 U.S. Dist.

LEXIS 141798, at *13-14; *see William A. Gross Constr. Assocs.*, 2009 U.S. Dist. LEXIS 21818, at *28-29.

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, LBSF respectfully submits that MLCS's motion to dismiss pursuant to Rule 12(b)(7) should be denied in all respects.

Dated:  March 20, 2015

Respectfully submitted,

/s/William A. Maher
William A. Maher
James N. Lawlor
Melissa A. Finkelstein

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300

25